PHILLIPS NIZER LLP
Marc B. Zimmerman (MZ 3923)
(mzimmerman@phillipsnizer.com)
Chryssa V. Valletta (CV 8507)
(cvalletta@phillipsnizer.com)
666 Fifth Avenue
New York, New York 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

LUIS RAMOS, HERBER MARTINEZ,  :
LEOBARDO MORENO, WILNER DUBON,
SERGIO CALDERON, JOSE BARRANCO,  :
OSWALDO ERAZO and MARIANO CASTRO,

     :

on behalf of themselves and                 Case No: 10 CIV 6271 (RMB) (AJP)
others similarly situated,     :

           Plaintiffs,     :

v.     :

BALDOR SPECIALTY FOODS, INC. and  :
KEVIN MURPHY,

     :

           Defendants.

------------------------------------------------------------ X

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Table of Contents

Page

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................. 3

ARGUMENT ........................................................................................... 6

POINT I      SUMMARY JUDGMENT IS APPROPRIATE IN FLSA EXEMPTION
ACTIONS ............................................................................................... 6

  A.    SUMMARY JUDGMENT STANDARD ........................................................... 6

  B.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THE FLSA EXECUTIVE
EXEMPTION APPLIES ................................................................................. 6

POINT II     PLAINTIFFS ARE EMPLOYED BY BALDOR IN A BONA FIDE
EXECUTIVE CAPACITY AND ARE EXEMPT FROM THE FLSA'S
OVERTIME PROVISIONS ............................................................................. 8

  A.    PLAINTIFFS' DUTIES SATISFY ALL THE ELEMENTS OF THE
EXECUTIVE EXEMPTION TO THE FLSA OVERTIME REQUIREMENTS ................ 9

    1.    Plaintiffs' Weekly Salary Is Well In Excess of the FLSA Requirement For
Exempt Executives .................................................................................. 10

    2.    Plaintiffs' Primary Duty is Management In Baldor's Warehouse ................... 11

      a.    Plaintiffs' Job Duties and Responsibilities Are "Management" ................ 11

      b.    Plaintiffs' Primary Duty Is Management ............................................ 14

      c.    Plaintiffs Manage a Customarily Recognized Baldor Department or
Subdivision ........................................................................................... 15

    3.    Each Plaintiff Customarily and Regularly Directs The Work of
Two or More Employees ............................................................................ 17

    4.    Plaintiffs Made Recommendations Regarding Other Employees' Status ........ 18

POINT III    PLAINTIFFS ARE EXEMPT FROM THE OVERTIME
PROVISIONS OF NEW YORK LABOR LAW .................................................... 21

CONCLUSION ......................................................................................... 22

i

# TABLE OF AUTHORITIES

## CASES

*Bandhan v. Lab. Corp. of Am.*, 2002 U.S. Dist. LEXIS 25972 (S.D.N.Y. Mar. 27, 2002) ...........22

*Baudin v. Courtesy Litho Arts*, 24 F. Supp. 2d 887 (N.D. Ill. 1998) .........................................7, 17

*Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190 (N.D.N.Y. 2002) .........................................22

*Beyer v. County of Nassau*, 524 F.3d 160 (2d Cir. 2008) ...............................................................6

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435 (2d Cir. 1999) ...............................................................6

*Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794 (N.D. Ohio 2009) ...................................7, 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................6

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569 (S.D.N.Y. 2004) .............21

*Golden v. Merrill Lynch & Co.*, 2007 U.S. Dist. LEXIS 90106 (S.D.N.Y. Dec. 6, 2007) ....6, 7, 15

*Grace v. Family Dollar Stores, Inc.*, 2011 U.S. App. LEXIS 5800 (4th Cir. N.C. Mar. 22, 2011) ......................................................................................................................................................7

*Gross v. NBC*, 232 F. Supp. 2d 58 (S.D.N.Y. 2002) ......................................................................6

*Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790 (W.D. La. 2009) ..............7, 20

*Mullins v. City of New York*, 2008 U.S. Dist. LEXIS 83370 (S.D.N.Y. Oct. 17, 2008) ...............21

*Pollard v. GPM Investments, LLC*, 2011 U.S. Dist. LEXIS 24199 (E.D. Va. Mar. 10, 2011) ....................................................................................................................................................7, 20

*Rooney v. Town of Groton*, 577 F. Supp. 2d 513 (D. Mass. 2008), *adopted by* 2008 U.S. Dist. LEXIS 106453 (D. Mass. Sept. 17, 2008) ............................................................................7

*Rozenblum v. Ocean Beach Props.*, 436 F. Supp. 2d 1351 (S.D. Fla. 2006) .................................20

*Wilbur v. Silgan Containers Corp.*, 2008 U.S. Dist. LEXIS 72804 (E.D. Cal. Aug. 18, 2008) .............................................................................................................................7, 15, 17, 20

## STATUTES AND RULES

29 C.F.R. §541.100(a) .................................................................................................2, 3, 10, 11, 17, 18

29 C.F.R. §541.102 ........................................................................................................................11

29 C.F.R. 541.104 ............................................................................................................16

29 C.F.R. §541.105 ..........................................................................................................18

29 C.F.R. § 541.700(a) .....................................................................................................14

29 C.F.R. §541.701 ..........................................................................................................13

Fed. R. Civ. P. 23 ..............................................................................................................3

Fed. R. Civ. P. 56 ..........................................................................................................1, 6

12 N.Y.C.R.R. §142-2.2 ..........................................................................................1, 2, 22

29 U.S.C. 201 *et seq* ........................................................................................................22

29 U.S.C. §213(a)(1) ...............................................................................................3, 9, 20

29 U.S.C. § 216, *et seq* .......................................................................................................1

1141490.TOA

Defendants Baldor Specialty Foods, Inc. ("Baldor") and Kevin Murphy (collectively, "Defendants") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56, for an order granting Defendants summary judgment and dismissing in its entirety the Complaint filed by Plaintiffs, Luis Ramos, Herber Martinez, Leobardo Moreno, Wilner Dubon, Sergio Calderon, Jose Barranco, Oswaldo Erazo and Mariano Castro (collectively, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

Baldor is a distributor of produce and specialty foods located in The Bronx, New York. Plaintiffs are eight of twenty individuals employed by Baldor as night-shift supervisors titled "Captains." Plaintiffs filed the instant action seeking overtime compensation despite the fact that each of them is employed by Baldor in a bona fide executive capacity and, therefore, is exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. §216, *et seq.* (the "FLSA") and New York Labor Law, 12 N.Y.C.R.R. §142-2.2. Plaintiffs go to great length to hide that indisputable fact -- even falsely alleging in the Complaint that they were employed by Baldor as "inventory checkers," a non-existent position.

---

[1] References herein to the transcript of the deposition of Jose Barranco dated February 11, 2011 are denoted herein as "Barranco Dep. __"; references to the Declaration of Marc Zimmerman are denoted herein as "Zimmerman Decl. __"; references to the Declaration of Edwin Rodriguez are denoted herein as "Rodriguez Decl. __"; references to the Declaration of Juan Almonte are denoted herein as "Almonte Decl. __"; references to the Declaration of Wilson Zepeda are denoted herein as "Zepeda Decl. __"; references to the Declaration of Djbril Camara are denoted herein as "Camara Decl. __"; references to the Declaration of David Cruz are denoted herein as "Cruz Decl. __"; references to the Declaration of Armando Hernandez are denoted herein as "Hernandez Decl. __"; references to the Declaration of Victor DeJesus are denoted herein as "DeJesus Decl. __"; references to the Declaration of Arturo Amador are denoted herein as "Amador Decl. __"; references to the Declaration of Eduardo Perez are denoted herein as "Perez Decl. __"; and references to the Declaration of Pedro Alejo are denoted herein as "Alejo Decl. __".

In reality, Plaintiffs' extensive and consistently exercised supervisory duties and responsibilities were rightly stated by Plaintiff Jose Barranco ("Barranco") at his deposition in this action. Barranco testified that, since he began his employment at Baldor in 1999, Baldor Captains were (and are) "in charge of" a team of other Baldor employees known as "Pickers," and that the "main part" of a Captain's job was (and is) to make sure his Pickers are doing their job correctly (Barranco Dep. 54-55, 80). Barranco's testimony confirmed beyond all doubt that he and all other Baldor Captains meet the FLSA requirements for "executive" employees exempt from the FLSA's overtime provisions, as follows:

First, Baldor's Captains are paid a weekly salary of $700 or more -- much more than the $455 required by the FLSA regulations (*see* Point II(A)(1), *infra*; 29 C.F.R. §541.100(a));

Second, the primary duty of Baldor's Captains is management of a team of Pickers on Baldor's night warehouse shift. Every shift, Captains assign, plan and direct their Pickers' work, appraise and assess productivity, participate in performance evaluations, effectively recommend hiring, pay raises and promotions and disciplinary transfers of Pickers, counsel poor performance and have authority to issue warnings to and to fire Pickers, among other management responsibilities. Plaintiffs' "main job" is to make sure their Pickers are doing their job correctly (*see* Point II(A)(2), *infra*; 29 C.F.R. §541.100(b));

Third, Baldor's Captains customarily and regularly direct the work of two or more Baldor employees. Captains are "in charge" of teams of three to six Pickers, and the Captains' regular duties include assigning the work to be performed by Pickers, reviewing the Pickers' work, directing the Pickers to correct errors in their work and assessing their Pickers' productivity (*see* Point II(A)(3), *infra*; 29 C.F.R. §541.100(c)); and

2

Fourth, Baldor's Captains have the authority to discipline and fire Pickers on their team, and Baldor affords particular weight to (and often relies exclusively upon) the Captains' recommendations concerning hiring, discipline, transfer, firing, pay raises and promotion of the Pickers they supervise (see Point II(A)(4), infra; 29 C.F.R. §541.100(d)).

Plaintiffs commenced (and captioned) this action "on behalf of themselves and others similarly situated." Plaintiffs, however, have failed to pursue any collective or class claims under the FLSA or Fed. R. Civ. P. 23, and no class has been certified. As Plaintiffs know, any such collective or class claims would fail on the merits because the twelve remaining Baldor Captains refused to join Plaintiffs in this baseless action, and nine of those Captains executed sworn Declarations (submitted herewith) in support of Baldor's motion for summary judgment.

For these reasons, the Court should find that Plaintiffs are employed in a bona fide executive capacity and therefore are: (1) exempt from the FLSA's overtime requirements (see 29 U.S.C. §213(a)(1)); and (2) exempt from New York Labor Law's overtime requirements, which mirror those of the FLSA (see 12 N.Y.C.R.R. §142-2.2). Accordingly, Defendants respectfully request that the Court grant their motion for summary judgment in its entirety.

## STATEMENT OF FACTS

Plaintiffs, like all 20 Captains at Baldor, are responsible for supervising a team of three to six of Baldor's 67 Pickers employed in its warehouse department on the night shift. Defendants' Statement Pursuant to Local Rule 56.1 ¶¶ 1, 4, 6, 8, 10-12, 13, 43. The Pickers gather (or "pick") products listed on Baldor's customers' orders from the warehouse shelves and move them to trucks for loading and delivery. Id. ¶¶ 6, 9. All Captains are compensated on a salary basis of more than $455 per week. Id. ¶ 3.

Captains are "in charge" of teams of Pickers (*Id.* ¶ 63) and the "main part" of their job is to make sure a Picker performs his job correctly. *Id.* ¶¶ 47, 63. Each Plaintiff must train new Pickers assigned to his team (*Id.* ¶ 14) and assign to each Picker orders that Picker is capable of fulfilling. *Id.* ¶¶ 14, 21-26. Captains have performed such duties since at least 1999. *Id.* ¶¶ 7, 8.

Each Captain also has an assigned work area where he and his Pickers report each shift. *Id.* ¶ 16, and arrives at Baldor approximately 30 minutes before his Pickers' shift starts in order to collect and inspect the Pickers' equipment (pallet jacks), and to make sure that the pallet jacks and the customers' orders are ready before his Pickers arrive. *Id.* ¶ 15. After the Pickers finish their work, Captains also spend approximately one hour performing work incidental to their managerial duties, such as inspecting and putting away the jacks their Pickers use, taking inventory and cleaning their work area. *Id.* ¶ 62.

Baldor's customer orders are grouped into "Picking Tickets," which list all of the products in each order that must be picked from the warehouse and loaded on delivery trucks. *Id.* ¶ 18. Each Captain must efficiently plan his Pickers' work by dividing the orders based upon order size, type of product and where the order must be loaded on a delivery truck, and then assigning the orders to Pickers. *Id.* ¶¶ 14, 19, 20, 22, 23. A Captain's effective planning and supervision increases his team's productivity and helps Pickers to earn additional "incentive" pay. *Id.* ¶ 36. Each Captain also must make sure that those Pickers on his team who work more quickly are assigned to pick the orders that must be loaded first. *Id.* ¶ 21 Captains must review their Pickers' work and direct them to correct any mistakes. *Id.* ¶ 30. Captains must sign completed Picking Tickets confirming their Pickers filled the orders correctly and are held responsible by Baldor for any mistakes made by their Pickers. *Id.* ¶ 32.

4

Each Captain is responsible for directing the work of each Picker on his team so that approximately 13 truckloads of product assigned to his team is shipped out of Baldor's warehouse each shift. *Id.* ¶¶ 28, 33, 38, 43. Captains monitor their Pickers' productivity and are required to verify their accuracy and productivity by signing a Pickers Production Report for each Picker on their team every night. *Id.* ¶¶ 29, 34. These Pickers Production Reports are used in determining whether Pickers will receive incentive pay. *Id.* ¶¶ 34-35. In addition, Captains bring good performing Pickers to Edwin Rodriguez, the Night Warehouse Manager whom the Captains report to, to request pay raises for such Pickers. *Id.* ¶¶ 40, 57.

Captains must monitor that their Pickers arrive to work on time, make no mistakes when picking orders and load the delivery trucks properly. *Id.* ¶¶ 17, 27, 37. If a Picker is not performing well, his Captain will speak to him to try to get him to improve his performance. *Id.* ¶¶ 31, 48. If the Picker does not improve, the Captain will take him to Mr. Rodriguez. *Id.* ¶ 49. Captains also have unilateral authority to warn or fire a Picker. *Id.* ¶¶ 51-52.

Captains have the authority to recommend that poorly performing Pickers be transferred from their team to another team, and Mr. Rodriguez typically follows their recommendation and transfers the Picker. *Id.* ¶ 50. Captains also participate in their Pickers' performance evaluations, and recommend good performing Pickers for promotions. *Id.* ¶¶ 53-55, 58. Mr. Rodriguez typically follows Captains' recommendations regarding promotion and promoted at least one person whom Barranco recommended to Captain. *Id.* ¶ 59, 60-61. Captains routinely meet with Mr. Rodriguez to discuss the warehouse department's productivity and performance. *Id.* ¶ 44. Mr. Rodriguez does not supervise the Pickers individually, and relies on the Captains to let him know how the Pickers are performing. *Id.* ¶ 41-42, 56.

1141490.1

## ARGUMENT

## POINT I

## <u>SUMMARY JUDGMENT IS APPROPRIATE IN FLSA EXEMPTION ACTIONS</u>

**A.    SUMMARY JUDGMENT STANDARD**

"Summary judgment procedure is properly regarded … as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). Summary judgment is warranted where the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "Mere conclusory statements, conjecture or speculation" by the Plaintiffs will not defeat summary judgment. *Gross v. NBC*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). Instead, the Plaintiffs must offer "concrete particulars." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999) (district court properly disregarded non-moving party's affidavit because it lacked "concrete particulars"). In this Circuit, employers such as Baldor must establish that an FLSA exemption exists merely by a preponderance of the evidence. *Golden v. Merrill Lynch & Co.*, 2007 U.S. Dist. LEXIS 90106, at *44-45 (S.D.N.Y. Dec. 6, 2007) (granting employer's motion for summary judgment where employer had met its burden of establishing the executive exemption).

**B.    SUMMARY JUDGMENT IS APPROPRIATE**
**     <u>WHERE THE FLSA EXECUTIVE EXEMPTION APPLIES</u>**

Federal courts routinely grant summary judgment for the defendant employer in FLSA classification cases where, as here, there exists no genuine issue of material fact whether the

elements of the executive exemption are met. *See, e.g., Grace v. Family Dollar Stores, Inc.,* 2011 U.S. App. LEXIS 5800 (4th Cir. N.C. Mar. 22, 2011) (affirming district court's grant of summary judgment to the employer, even though employee spent 99% of her time performing nonexecutive duties, because employee performed exempt and non-exempt work concurrently); *Pollard v. GPM Investments, LLC,* 2011 U.S. Dist. LEXIS 24199, at *21 (E.D. Va. Mar. 10, 2011) (granting summary judgment and holding that "courts uniformly reject arguments that an employee cannot be an exempt executive if he cannot make hiring or firing decisions or is subject to rigid supervision"); *Burson v. Viking Forge Corp.,* 661 F. Supp. 2d 794, 803 (N.D. Ohio 2009) (granting summary judgment to employer despite the fact that executive employee's discretion was "by no means unfettered and abounding"); *Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790 (W.D. La. 2009) (granting employer's motion for partial summary judgment); *Rooney v. Town of Groton,* 577 F. Supp. 2d 513, 532 (D. Mass. 2008), *adopted by* 2008 U.S. Dist. LEXIS 106453 (D. Mass. Sept. 17, 2008) (granting partial summary judgment to employer because employee "played an integral role in the new hire and promotion process on multiple occasions"); *Wilbur v. Silgan Containers Corp.,* 2008 U.S. Dist. Lexis 72804, at *26 (E.D. Cal. Aug. 18, 2008) (granting summary judgment to employer where plaintiff did not have the power to hire and fire unilaterally); *Golden v. Merrill Lynch & Co.,* 2007 U.S. Dist. LEXIS 90106 (S.D.N.Y. Dec. 6, 2007) (granting summary judgment to employer where employee performed management duties such as training employees, monitoring their performance, reviewing productivity reports, ensuring her unit was meeting performance objectives, evaluating employees, and addressing performance issues); *Baudin v. Courtesy Litho Arts,* 24 F. Supp. 2d 887, 891 (N.D. Ill. 1998) (granting summary judgment to employer where plaintiff performed

management duties such as distributing work to other employees and checking others' work for mistakes).

As set forth in detail below, summary judgment similarly is appropriate in the instant case as Plaintiffs squarely meet all the requirements as executive employees exempt from the FLSA's and New York State's overtime requirements.

**POINT II**

**PLAINTIFFS ARE EMPLOYED BY BALDOR
IN A BONA FIDE EXECUTIVE CAPACITY
AND ARE EXEMPT FROM THE FLSA'S OVERTIME PROVISIONS**

The sole issue in this action is whether Plaintiffs are exempt from the overtime provisions of the FLSA and New York State law.  Recognizing that all Plaintiffs are identically situated and performed identical job duties, Magistrate Judge Peck suggested during the January 31, 2011 status conference that the parties stipulate that Defendants depose less than all eight Plaintiffs on the condition that Plaintiff will not subsequently call any other Plaintiff to "in any way contradict anything that the [deposed] co-Plaintiffs have said." *See* Zimmerman Decl., Ex. B at 23:19-24:2. Plaintiffs' counsel agreed, stating "I think that's a great way to do it just because they're all working in the same task." *Id.* at 24:3-24:4.  At the February 11, 2011 deposition of Plaintiff Jose Barranco, the parties entered into the following stipulation:

> To potentially save everyone from the time and expense of eight depositions, we stipulate that if defendants take less than all eight of the named plaintiffs' depositions, that **plaintiffs will not call any of the [other] plaintiffs [whom] defendants do not depose to in any way contradict anything that the deposed coplaintiffs have said**.  That means, that if, for jury purposes, they need to have all eight plaintiffs testify at trial, they'll do so, but that **the people, who, by agreement, don't get deposed, are not going to contradict something important said by one of the deposed plaintiffs**.

8

Zimmerman Decl., Ex. A at 4-5 (hereinafter "Barranco Dep.") (emphasis added).

Barranco's testimony alone demonstrates that Plaintiffs' duties and responsibilities as Captains satisfy all the requirements of the FLSA's executive exemption. Based upon the parties' stipulation, Plaintiffs may not contradict <u>any</u> testimony given by Barranco at his deposition.[2]

The Declarations (submitted herewith) of Edwin Rodriguez (Baldor's Night Warehouse Manager) and the nine other non-Plaintiff Captains who perform "identical" work to Plaintiffs (Barranco Dep. 154) demonstrate conclusively that each and every Baldor Captain, including Plaintiffs, were employed by Baldor in a bona fide executive capacity and, therefore, are exempt from the FLSA and New York State overtime requirements.

## A.    PLAINTIFFS' DUTIES SATISFY ALL THE ELEMENTS OF THE EXECUTIVE EXEMPTION TO THE FLSA OVERTIME REQUIREMENTS

The FLSA provides that "[a]ny employee employed in a bona fide executive . . . capacity" is exempted from the FLSA's overtime requirement to pay employees time-and-a-half for all hours worked over forty each week.   29 U.S.C. § 213(a)(1).   The United States Department of Labor regulations issued pursuant to the FLSA (the "FLSA Regulations") provide that the "executive" exemption applies to any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[2]    Additionally, Plaintiffs failed to take even a single deposition in this action.

9

29 C.F.R. § 541.100(a).  The undisputed facts demonstrate that Plaintiffs, like all Baldor Captains, squarely meet all these requirements for the entire time period applicable to this action.[3]

### 1. Plaintiffs' Weekly Salary Is Well In Excess of the FLSA Requirement For Exempt Executives

The first prong of the executive exemption is met because Plaintiffs are compensated on a weekly salary of at least $455.  29 C.F.R. § 541.100(a)(1).  Barranco conceded that when he was promoted to Captain nearly 5 years ago, he earned a weekly salary of $700 (Barranco Dep. 98-99) and that he was paid a weekly salary of more than $455 during every week he worked since he became a Captain.[4]  He testified:

> Q: Since you became a [C]aptain on July 2, 2006, was your weekly salary more than $455 every single week?
>
> A: Yes.

Barranco Dep. 140.  The same is true for every other Plaintiff and Baldor Captain.  *See* Rodriguez Decl. ¶ 13; Almonte Decl. ¶¶ 17-18; Zepeda Decl. ¶¶ 17-18; Camara Decl. ¶¶ 17-18;

---

[3]     Both Baldor's procedure of placing a Captain in charge of a team of Pickers, and the Captains' duties and responsibilities have remained unchanged since at least 1999 (*see* Barranco Dep. 54-55; Rodriguez Decl. ¶ 43), which period encompasses the maximum period of Plaintiffs' wage claims herein.

[4]     Plaintiffs do not claim to be owed overtime pay for periods prior to their employment as Captains.  Barranco himself conceded at his deposition:

> Q: When you were a [P]icker, were you paid overtime?
> A: Yes.
> Q: And when you were working as a [P]icker, were you paid correctly by Baldor for all hours you worked?
> A: Yes.

Barranco Dep. 44.

1141490.1

Cruz Decl. ¶¶ 17-18; Hernandez Decl. ¶¶ 17-18; DeJesus Decl. ¶¶ 17-18; Amador Decl. ¶¶ 17-18; Perez Decl. ¶¶ 17-18; Alejo Decl. ¶¶ 17-18.[5]

### 2.    Plaintiffs' Primary Duty is Management In Baldor's Warehouse

The second prong of the executive exemption is met because Plaintiffs' primary duty is "management ... of a department or customarily recognized subdivision" of Baldor. *See* 29 C.F.R. 541.100(a)(2).

### a.    Plaintiffs' Job Duties and Responsibilities Are "Management"

The FLSA Regulations provide that "management" includes, without limitation:

> activities such as ... training of employees; ... directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; ... disciplining employees; planning the work; ... apportioning the work among the employees; ... controlling the flow and distribution of materials or merchandise and supplies....

29 C.F.R. §541.102.  Plaintiffs performed all of those duties as Baldor Captains.

Barranco testified that he, like all Baldor Captains, is "in charge of" a team of Pickers and the "main part" of his job is "to make sure his Pickers are doing their job correctly" (Barranco Dep. 54-55, 80).  Accordingly, Captains "help [their Pickers] so they can advance" (Barranco Dep. 128), "make sure that the [P]ickers on their team are at an acceptable productivity level" (Barranco Dep. 133), make sure that their Pickers do not work too slowly (Barranco Dep. 76-77) and make sure their Pickers make "no mistakes" (Barranco Dep. 76, 102-103).

Barranco testified that a Picker's job is "difficult" (Barranco Dep. 41); and that when he was employed by Baldor as a Picker, it took him "more than four years to get good at [that] job"

---

[5]    Baldor Captains earn far more than the Pickers they supervise (Barranco Dep. 102). Pickers are paid an hourly rate, and overtime as applicable (Barranco Dep. 98, 140).  If a Picker is promoted to Captain, he is paid a weekly salary that is a "big pay raise" from what he earned as a Picker (Barranco Dep. 98-99, 101; *see also* Rodriguez Decl. ¶ 13).

(Barranco Dep. 40, 127).  Barranco also readily conceded that each Baldor Captain is required to perform extensive management duties in supervising his team of Pickers, and that Captains

- train new Pickers and direct their work by making sure that they are assigned orders that they are capable of picking (Barranco Dep. 127; Rodriguez Decl. ¶¶ 14, 16; Almonte Decl. ¶¶ 20, 25-27; Zepeda Decl. ¶¶ 20, 25-27; Camara Decl. ¶¶ 20, 25-27; Cruz Decl. ¶¶ 20, 25-27; Hernandez Decl. ¶¶ 20, 25-27; DeJesus Decl. ¶¶ 20, 25-27; Amador Decl. ¶¶ 20, 25-27; Perez Decl. ¶¶ 20, 25-27; Alejo Decl. ¶¶ 20, 25-27);

- plan their Pickers' work, both by assigning certain orders to certain Pickers, and by planning the order in which the items must be placed in the trucks by the Pickers (Barranco Dep. 51-52, 59-60, 66-70, 102-103; Rodriguez Decl. ¶¶ 14, 19, 23; Almonte Decl. ¶¶ 25-28; Zepeda Decl. ¶¶ 25-28; Camara Decl. ¶¶ 25-28; Cruz Decl. ¶¶ 25-28; Hernandez Decl. ¶¶ 25-28; DeJesus Decl. ¶¶ 25-28; Amador Decl. ¶¶ 25-28; Perez Decl. ¶¶ 25-28; Alejo Decl. ¶¶ 25-28);

- make sure their Pickers arrive to work on time (Barranco Dep. 102);

- provide for their Pickers' safety by inspecting the mechanical equipment they use before the Pickers arrive to work (Barranco Dep. 116-119);

- arrive at work earlier than their teams of Pickers to have their Pickers' equipment and orders ready for the start of the shift (Barranco Dep. 111);

- make sure the Pickers did their job correctly, with no mistakes (Barranco Dep. 84, 102);

12

- appraise and track the productivity and efficiency of their Pickers and confirm a Picker performed specific assigned tasks during the shift (Barranco Dep. 84-86, 89; Rodriguez Decl. ¶¶ 22, 26; Almonte Decl. ¶¶ 30-34; Zepeda Decl. ¶¶ 30-34; Camara Decl. ¶¶ 30-34; Cruz Decl. ¶¶ 30-34; Hernandez Decl. ¶¶ 30-34; DeJesus Decl. ¶¶ 30-34; Amador Decl. ¶¶ 30-34; Perez Decl. ¶¶ 30-34; Alejo Decl. ¶¶ 30-34);[6]

- participate in their Pickers' performance evaluations (Barranco Dep. 136-138);

- recommend promotions of Pickers on their teams (Barranco Dep. 100-101);

- request that poorly performing Pickers be transferred off their teams (Barranco Dep. 124-126);

- verbally counsel their Pickers who were performing poorly, or even bring them to the Night Warehouse Manager for further counseling (Barranco Dep. 77-78, 129, 133);

- are authorized to discipline their Pickers by written warning or even termination of employment (Barranco Dep. 135-136; Rodriguez Decl. ¶ 40; Almonte Decl. ¶ 39; Zepeda Decl. ¶ 39; Camara Decl. ¶ 39; Cruz Decl. ¶ 39; Hernandez Decl. ¶ 39; DeJesus Decl. ¶ 39; Amador Decl. ¶ 39; Perez Decl. ¶ 39; Alejo Decl. ¶ 39); and

---

[6]     Additionally, the Captains' confirmation and sign off on nightly Pickers Production Reports are the determinative factor as to whether a Picker will receive additional incentive pay for picking more than 95 items per hour.  Barranco Dep. 70-71; 85-86; Rodriguez Decl. ¶ 27.

13

- are "responsible for what went out of the warehouse" (Barranco Dep. 73), including verifying that orders were filled correctly and signing Picking Tickets to confirm that the orders were properly filled (Barranco Dep. 74, 79-80).

Accordingly, Plaintiffs perform management duties sufficient to satisfy the FLSA requirement for exempt executive employees.

### b.    Plaintiffs' Primary Duty Is Management

The FLSA Regulations provide that "'primary duty' means the principal, main, major or most important duty that the employee performs" and that the "major emphasis" should be on the character of the employee's job as a whole. 29 C.F.R. § 541.700(a). It is undisputed that the "main job" of a Baldor Captain is to supervise his team of Pickers to make sure they are working efficiently and productively (Barranco Dep. 80). Barranco testified unequivocally that Captains were "in charge of" a team of Pickers (Barranco Dep. 54-55) and that their primary duty was management of that team:

> Q:    It's pretty important for a [C]aptain to make sure his pickers are doing their job correctly; is that correct?
>
> A:    Yes.
>
> Q:    Is that the main part of your job as a [C]aptain?
>
> A:    Yes.

Barranco Dep. 80.[7]

---

[7]    Captains also are required to perform some work incidental to their managerial duties (such as returning pallet jacks used by their Pickers, taking warehouse inventory and cleaning their work areas) (Barranco Dep. 91-97). Such duties require, at most, one hour of a Captain's work time during his shift (Barranco Dep. 96-97). The performance of such non-exempt work concurrently with exempt work does not affect the applicability of the executive exemption, as the FLSA Regulations provide that an employee who, like each Plaintiff herein, spends more

In *Wilbur v. Silgan Containers Corp.,* 2008 U.S. Dist. Lexis 72804, at *23-24 (E.D. Cal. Aug. 18, 2008), a district court granted summary judgment to an employer in an executive exemption case upon determining the employee's primary duty was management where the employee:

> trained employees, directed their work, appraised their productivity and efficiency for the purpose of recommending promotions or other changes in status, disciplined them, planned the work, determined the techniques to be used, maintained production records, determined the type machinery and equipment to be used, and provided for the safety and security of the employees.

*Id. See also, Golden,* 2007 U.S. Dist. LEXIS 90106, at *34 (employee's primary duty was management where she performed tasks such as training employees, monitoring their performance, reviewing productivity reports, ensuring her unit was meeting performance objectives, evaluating employees, and addressing performance issues).   As in *Wilbur* and *Golden,* Plaintiffs' duties and responsibilities herein encompass a wide variety of management functions.  Indeed, Barranco himself testified that making sure his subordinates were performing their job correctly was the "main part" of a Captain's job.  He concedes that Captains are required to confirm that his Pickers "actually did their work correctly" (Barranco Dep. 84), are responsible to "track the productivity of their [P]ickers" (Barranco Dep. 89), and generally are "responsible for what went out of the warehouse" (Barranco Dep. 73).  Accordingly, Plaintiffs' "primary duty" plainly is management.

### c.    Plaintiffs Manage a Customarily Recognized Baldor Department or Subdivision

Both Baldor's warehouse department, and the smaller subdivision of "teams" of Pickers assigned to a particular Captain constitute "customarily recognized department[s] or

---

than 50 percent of his time performing managerial work will satisfy the "primary duty requirement." 29 C.F.R. § 541.700(b).

subdivision[s]" of Baldor's night-shift operations. According to the FLSA regulations, such phrase "is intended to distinguish between a mere collection of men assigned from time to time to a specific job or series of jobs and a unit with permanent status and function." 29 C.F.R. 541.104.

Baldor's night shift is a complicated operation that requires a number of different departments; for example, the night sales department, the receiving department, the transportation department, the maintenance department, the International Produce Exchange team, and the warehouse product picking teams department. Rodriguez Decl. ¶ 2. Each Baldor Captain is a supervisor in Baldor's warehouse department in charge of, and responsible for the nightly supervision of, a specific team of Pickers in a particular work area in the warehouse (Barranco Dep. 50-51, 54-55, 76, 80, 103; Rodriguez Decl. ¶18; Almonte Decl. ¶¶ 23-24; Zepeda Decl. ¶¶ 23-24; Camara Decl. ¶¶ 23-24; Cruz Decl. ¶¶ 23-24; Hernandez Decl. ¶¶ 23-24; DeJesus Decl. ¶¶ 23-24; Amador Decl. ¶¶ 23-24; Perez Decl. ¶¶ 23-24; Alejo Decl. ¶¶ 23-24). Each Captain meets separately with his team of Pickers. (Barranco Dep. 51.)

Baldor's Pickers' duties are to retrieve and move assigned product from Baldor's warehouse to its delivery trucks. There literally are thousands of items in Baldor's warehouse, and a team of Pickers is responsible to move approximately 150 orders from the warehouse so as to fill approximately 13 trucks on a nightly basis (Rodriguez Decl. ¶¶ 10, 19). Due to the huge volume of orders and deliveries, Baldor employs a large number of Pickers (67) on Baldor's night shift (*see* Barranco Dep. 45; Rodriguez Decl.¶ 9), and 20 different Captains to assign and direct work to a team of Pickers, and review their work and productivity (Barranco Dep. 126-128, 133, 137-138). Baldor relies on these supervisors to determine whether the Pickers are performing their job well (Barranco Dep. 73-78, 80, 133, 136, 137-138) because there simply are

16

too many Pickers for the Night Warehouse Manager individually to supervise the work of the large number of Pickers (Barranco Dep. 136; Rodriguez Decl. ¶ 12).

District courts have determined that supervisors of discrete and smaller "crews", "shifts" and "departments," like those maintained by Baldor herein, satisfy the FLSA exemption standard. *See, e.g., Burson v. Viking Forge Corp.,* 661 F. Supp. 2d 794, 800 (N. D. Ohio 2009) (granting employer's motion for summary judgment; plaintiff supervised one of four shifts and each shift constituted a separate subdivision); *Wilbur v. Silgan Containers Corp.,* 2008 U.S. Dist. Lexis 72804, at *23 (E.D. Cal. Aug. 18, 2008), (granting employer's motion for summary judgment; holding that employee supervised a recognized department or subdivision where "Plaintiff was in charge of a given crew for the duration of his shift," even though Plaintiff "sometimes worked with different twelve-or thirteen-person crews"); *Baudin v. Courtesy Litho Arts,* 24 F. Supp. 2d 887, 892 (N.D. Ill. 1998) (granting employer's motion for summary judgment; holding that employee supervised a recognized subdivision of employer where the department and the employees who worked within it had goals and functions necessary to keep the business operating and the department had a separate physical location within the plant). Accordingly, Plaintiffs' supervision, direction and control of established teams of Pickers within Baldor's warehouse department satisfies the FLSA requirement for the executive exemption.

### 3.   Each Plaintiff Customarily and Regularly Directs The Work of Two or More Employees

The third prong of the executive exemption is met because each Plaintiff "customarily and regularly directs the work of two or more other employees." 29 C.F.R. §541.100(a)(3). The FLSA regulations specify that to satisfy the standard, the frequency of such direction simply must be "greater than occasional" and tasks performed must "include[] work normally and recurrently performed every workweek." 29 C.F.R. §541.701.

17

All Plaintiffs customarily and regularly direct the work of set teams of three to six Pickers (Barranco Dep. 52-53, 127-128; Rodriguez Decl. ¶¶ 8, 14). Among other standard tasks, Captains meet in the same assigned location every night (Barranco Dep. 50-51); Captains are responsible for making sure their Pickers arrived at work on time (Barranco Dep. 102); Captains are assigned a work table in a specific work area (Rodriguez Decl. ¶ 20); Captains assign and direct the Pickers' work (Barranco Dep. 52-53; 66-68, 127-128); and Captains review their Pickers' work and direct them to correct mistakes (Barranco Dep. 75-76, 80). Captains therefore satisfy the FLSA standard for the executive exemption.

### 4. Plaintiffs Made Recommendations Regarding Other Employees' Status

The fourth and final prong of the exemption test is met because Plaintiffs have the authority to "fire other employees" and because their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight" by Baldor. 29 C.F.R. § 541.100(a)(4). The FLSA regulations provide that courts may consider, without limitation, (1) whether it is part of the employee's job duties to make such suggestions and recommendations; (2) the frequency with which such suggestions and recommendations are made or requested; and (3) the frequency with which the employee's suggestions and recommendations are relied upon. 29 C.F.R. §541.105.

In the instant case, it is undisputed that Plaintiffs' perform managerial duties including counseling poor performing Pickers on their team to improve (Barranco Dep. 77-78, 129). If unable to correct a Picker's performance issue, Plaintiffs, like all other Baldor Captains, had several options: they could (and did) bring the Picker to see the Night Warehouse Manager to discuss the issue; they could issue a written warning to the Picker; or they could fire the Picker (*See* Barranco Dep. 129, 133, 135-136; Almonte Decl. ¶¶ 39, 42-43; Zepeda Decl. ¶¶ 39, 42-43; Camara Decl. ¶¶ 39, 42-43; Cruz Decl. ¶¶ 39, 42-43; Hernandez Decl. ¶¶ 39, 42-43; DeJesus

18

Decl. ¶¶ 39, 42-43; Amador Decl. ¶¶ 39, 42-43; Perez Decl. ¶¶ 39, 42-43; Alejo Decl. ¶¶ 39, 42-43).

Additionally, a Captain's recommendation concerning hiring, firing, promotion, pay raises and disciplinary transfers carries significant weight. For example, Barranco spoke to Baldor's Night Warehouse Manager concerning a job for his cousin, who subsequently was hired (Barranco Dep. 109). For a Captain's good-performing Pickers, Captains also recommend pay raises (Barranco Dep. 103-105), and even promotions to Captain positions (Barranco Dep. 100-101). In fact, at least two of Barranco's Pickers asked him for a raise (Barranco Dep. 103-105), and Barranco recommended at least one of his Pickers, Juan Almonte, for promotion to Captain, and Mr. Almonte was promoted to such position (Barranco Dep.102-103, 108; Almonte Decl. ¶ 16). For a Captain's very poor-performing Pickers, Captains have requested that the Night Warehouse Manager transfer such employees off their team. Barranco himself testified that he recommended to Baldor's Night Warehouse Manager that two employees be transferred off his team, and both were taken off his team (Barranco Dep. 124-126).

Additionally, Captains are responsible to evaluate their Pickers' performance and attend and participate in their performance evaluations (Barranco Dep. 136-138). Indeed, because there are so many Pickers on the shift, Baldor's Night Warehouse Manager relies on the Captains to let him know if their Pickers are performing their job well (Barranco Dep. 136; Rodriguez Decl. ¶ 41). Since Baldor's Night Warehouse Manager does not supervise the Pickers individually and does not himself know how an individual Picker is performing, a Picker's Captain always is present at a performance evaluation and speaks about how the Picker is doing at his job (Barranco Dep. 137-138).

Under similar circumstances, courts have found that the fourth factor in the executive exemption test is met and have granted summary judgment to the employer. In *Rozenblum v. Ocean Beach Props.*, 436 F. Supp. 2d 1351, 1363 (S.D. Fla. 2006), the court found the executive exemption applicable and granted summary judgment for an employer finding that a hotel's night manager who supervised other employees was an exempt executive. Even where a factual dispute existed as to whether the manager could fire any other employees, the court found that because the manager reported to the motel owner concerning other employees' performance, the employer "placed particular weight on [the manager's] opinion and recommendations regarding employee performance" and therefore was entitled to summary judgment. *Id.* at 1364.

Likewise, in *Wilbur*, the court found the executive exemption applicable and granted summary judgment to the employer where an employee simply made recommendations as to whether probationary employees should continue in employment, despite not having the unilateral power to hire or fire. *Wilbur*, 2008 U.S. Dist. Lexis 72804, at *26.

In *Monroe Firefighters Ass'n*, the Court found that employees with authority to reprimand and counsel subordinates, recommend transfers, and perform evaluations were exempt executives, even though they had no authority themselves to hire or fire. *Monroe Firefighters Ass'n*, 600 F. Supp. 2d at 800-801.

Similarly, in *Pollard*, the Court granted summary judgment to the employer even though none of the plaintiffs had the authority to hire or fire other employees. *Pollard*, 2011 U.S. Dist. LEXIS 24199, at *26.

Finally, in *Mullins v. City of New York*, 2008 U.S. Dist. LEXIS 83370, at *9-12 (S.D.N.Y. Oct. 17, 2008), a jury applied the executive exemption on the basis that the employees provided performance evaluations and recommended employees for promotion or transfer,

despite not having the authority to hire or fire.  This District Court denied the employees motion for a new trial.

In this case, Plaintiffs participated in employee evaluations of their Pickers, recommended hiring, pay raises, promotions and disciplinary transfers.  Baldor's Night Warehouse Manager relied exclusively upon Baldor's Captains for such information, since he was not involved in the day to day supervision of the Pickers (Rodriguez Decl. ¶ 41). Accordingly since Captains' recommendations as to the hiring, firing, advancement, promotion and change of status of Pickers on their teams were given "particular weight," the FLSA executive exemption standard is satisfied.

## POINT III

### PLAINTIFFS ARE EXEMPT FROM THE
### OVERTIME PROVISIONS OF NEW YORK LABOR LAW

New York State law recognizes the identical executive exemption to overtime payment as set forth in the FLSA.  Section 13(a)(1) of the FLSA codifies the executive exemption, 29 U.S.C. §213(a)(1) (providing that the FLSA overtime payment requirements do not apply to "any employee employed in a bona fide executive… capacity"), and is incorporated by reference in implementing regulations including New York's wage order for "Miscellaneous Industries and Occupations" and implementing regulations, which provides:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of Section 7 and Section 13 of 29 U.S.C. 201 *et seq.*, of the Fair Labor Standards Act of 1938, as amended….

12 N.Y.C.R.R. §142-2.2.  Therefore, a finding that Plaintiffs are exempt under the FLSA exemption also mandates the dismissal of their New York Labor Law claims. *See, e.g., Galasso*

*v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 575 (S.D.N.Y. 2004) (granting summary judgment to employer on the professional exemption and concluding that "plaintiff is no more entitled to overtime pay under state law than he is under federal law."); *Bandhan v. Lab. Corp. of Am.*, 2002 U.S. Dist. LEXIS 25972, at *20 (S.D.N.Y. Mar. 27, 2002) ("With respect to plaintiff's overtime claim under New York Labor Law, said claim is addressed with this FLSA analysis since New York employers must comply with overtime provisions of the FLSA."); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002) (analyzing overtime claim under FLSA and holding that such analysis applied equally to plaintiff's claims under the New York Labor Law).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment in its entirety, dismiss Plaintiffs' claims in all respects, and grant Defendants' costs and attorneys' fees in defending this matter and such other relief as the Court deems proper.

Dated: New York, New York
     April 1, 2011

        PHILLIPS NIZER LLP


        By:/s/ Marc B. Zimmerman
           Marc B. Zimmerman (MZ 3923)
           Chryssa V. Valletta (CV 8507)
        666 Fifth Avenue
        New York, New York 10103-0084
        (212) 977-9700
        mzimmerman@phillipsnizer.com
        cvalletta@phillipsnizer.com
        *Attorneys for Defendants*